## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | |
|---|---|
| KEITH C., | ) |
| | ) |
|         Plaintiff, | ) |
| | ) |
| v. | ) Docket No. 1:21-cv-00198-NT |
| | ) |
| KILOLO KIJAKAZI, | ) |
| Acting Commissioner of the | ) |
| Social Security Administration, | ) |
| | ) |
|         Defendant. | ) |

## ORDER

Pursuant to 42 U.S.C. § 405(g), Plaintiff Keith C. (the "**Plaintiff**") seeks judicial review of the decision of the Commissioner of the Social Security Administration (the "**Commissioner**" or "**Defendant**") denying his application for Social Security Disability Insurance ("**SSDI**") benefits and Supplemental Security Income ("**SSI**") payments. The Plaintiff argues that reversal and remand are appropriate for two reasons: (1) the residual functional capacity assessment performed by the Administrative Law Judge ("**ALJ**") is not supported by substantial evidence, and (2) the ALJ's appointment was not constitutionally valid. For the reasons discussed below, the Commissioner's decision is **AFFIRMED**.

## ADMINISTRATIVE PROCEEDINGS

The Plaintiff applied for SSDI and SSI benefits on November 23, 2015, claiming he became disabled on June 14, 2010, and had not worked since. Before that, he worked as a lumber grader and lumber-stacking laborer and as a small parts

assembler and packager. In May of 2016, the Commissioner denied the Plaintiff's applications for benefits. The Plaintiff requested a hearing before an ALJ, asking that the ALJ make an independent assessment of his claim. On October 14, 2020, the Plaintiff had a hearing before an ALJ where he was represented by counsel, and both the Plaintiff and a vocational expert testified.

Following the hearing, on November 12, 2020, the ALJ issued a decision denying the Plaintiff SSDI and SSI benefits.[1] The ALJ applied the customary five-step test to determine if the Plaintiff has a disability within the meaning of the Social Security Act. *See* 20 C.F.R. § 416.920. "The test asks questions that are sequential and iterative, such that the answer at each step determines whether progression to the next is warranted." *Sacilowski v. Saul*, 959 F.3d 431, 433 (1st Cir. 2020). The First Circuit has further explained the sequential five-step analysis:

> [Step 1] if the applicant is engaged in substantial gainful work activity, the application is denied; [Step 2] if the applicant does not have, or has not had within the relevant time period, a severe impairment or combination of impairments, the application is denied; [Step 3] if the impairment meets the conditions for one of the "listed" impairments in the Social Security regulations, then the application is granted; [Step 4] if the applicant's "residual functional capacity" is such that he or she can still perform past relevant work, then the application is denied; [Step 5] if the applicant, given his or her residual functional capacity, education, work experience, and age, is unable to do any other work, the application is granted.

*Seavey v. Barnhart*, 276 F.3d 1, 5 (1st Cir. 2001) (citing 20 C.F.R. § 416.920). The claimant bears the burden of production and persuasion at Steps 1 through 4, but the

---

[1]  At oral argument, the parties agreed that there is limited evidentiary support for the Plaintiff's SSDI claim and that remand should be limited to the SSI claim, so I train my analysis only on the Plaintiff's claimed entitlement to SSI benefits under Title 16.

Commissioner bears the Step-5 burden of demonstrating evidence of jobs in the national economy that the claimant is able to perform. *Sacilowski*, 959 F.3d at 434 (citations omitted).

In the Plaintiff's case, the ALJ found that the Plaintiff satisfied Step 1 as he had not engaged in substantial gainful activity since June 14, 2010. At Step 2, the ALJ found that the amputation of two toes on the Plaintiff's left foot constituted a severe impairment, but that the Plaintiff's hypertension, lumbar spine degenerative disc disease, bilateral carpal tunnel syndrome and ulnar neuropathies, and Dupuytren's contracture of his middle and pinky fingers on his left (non-dominant) hand were non-severe. At Step 3, the ALJ concluded that Plaintiff did not have a listed impairment. The ALJ then assessed the Plaintiff's residual functional capacity ("**RFC**"), taking into account all of the Plaintiff's medically determinable impairments—both severe and non-severe—and determined that the Plaintiff had the RFC to perform the full range of medium work. Moving onto Step 4, given his RFC finding and considering the testimony of the vocational expert, the ALJ found that the Plaintiff could perform his past jobs assembling small parts and running a packaging machine (which are classified as light and medium work). Alternatively, the ALJ found at Step 5 that, given the Plaintiff's age, education, work experience, and his full-range-of-medium-work RFC, there are other jobs that exist in significant numbers in the national economy that the Plaintiff could perform. Therefore, the ALJ found that the Plaintiff was not disabled and denied his claim for disability benefits.

The Appeals Council denied the Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. On July 16, 2021, the Plaintiff filed a complaint in this Court seeking review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

The Social Security Act gives district courts the authority to affirm, modify, or reverse an ALJ's decision or to remand the case for a rehearing. 42 U.S.C. § 405(g). But a district court's review of an ALJ decision is not de novo. *See Lizotte v. Sec'y of Health & Hum. Servs.*, 654 F.2d 127, 128 (1st Cir. 1981). In conducting a §405(g) review, the court "is limited to determining whether the ALJ deployed the proper legal standards and found facts upon the proper quantum of evidence." *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam). "The findings of the Commissioner . . . as to any fact" are "conclusive" if they are "supported by substantial evidence." 42 U.S.C. § 405(g); *see Seavey*, 276 F.3d at 9. Substantial evidence means evidence "reasonably sufficient" to support the ALJ's conclusion. *Doyle v. Paul Revere Life Ins. Co.*, 144 F.3d 181, 184 (1st Cir. 1998); *see also Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) ( "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high."). The reviewing court "must uphold the [Commissioner]'s findings if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support [the] conclusion." *Irlanda Ortiz v. Sec'y of Health & Hum. Servs.*, 955 F.2d 765, 769 (1st Cir. 1991) (per curiam) (quoting *Rodriguez v. Sec'y of Health*

*& Hum. Servs.*, 647 F.2d 218, 222 (1st Cir. 1981)). Once the court concludes that the decision is supported by substantial evidence, the Commissioner must be affirmed, even if the court would have reached a contrary result as finder of fact. *See Rodriguez Pagan v. Sec'y of Health & Hum. Servs.,* 819 F.2d 1, 3 (1st Cir. 1987) (per curiam).

## DISCUSSION

The Plaintiff argues that I should remand this matter for two reasons: (1) the ALJ erred in denying his claim for disability benefits because, in assessing the Plaintiff's RFC, the ALJ failed to find the Plaintiff's back and hand impairments severe and relied on the opinions of medical consultants who had not seen the entire record; and (2) the ALJ's appointment is constitutionally invalid.

**I.   The ALJ's RFC Assessment**

**A.   Severe Impairment Determination**

First, the Plaintiff challenges the ALJ's decision at Step 2—determination of a severe impairment—of the five-step analysis. At Step 2, the Plaintiff has the burden to prove that he has a medically determinable severe impairment or combination of medically determinable impairments. *Ramos v. Barnhart*, 60 F. App'x 334, 335 (1st Cir. 2003) (per curiam). But the Plaintiff's Step 2 burden is a *de minimis* burden, meant to screen out groundless claims. *McDonald v. Sec'y of Health & Hum. Servs.,* 795 F.2d 1118, 1122–23 (1st Cir. 1986). When a claimant produces evidence of an impairment, the Commissioner may make a non-disability determination at Step 2 only when the medical evidence "establishes only a slight abnormality or combination of slight abnormalities which would have no more than a minimal effect

5

on an individual's ability to work even if the individual's age, education, or work experience were specifically considered." *Id.* at 1124 (quoting Social Security Ruling 85–28). For an impairment to be severe, it must "significantly limit[ ] a claimant's ability to perform basic work activities." *Barrientos v. Sec'y of Health & Hum. Servs.*, 820 F.2d 1, 1 (1st Cir. 1987) (per curiam). "A diagnosis, standing alone, does not establish that the diagnosed impairment would have more than a minimal impact on the performance of work activity." *April D. v. Saul*, No. 1:18-cv-00414-JDL, 2019 WL 2648445, at *2 (D. Me. June 27, 2019), *R. & R. adopted sub nom. April D. v. Soc. Sec. Admin. Comm'r*, No. 1:18-cv-00414-JDL, 2019 WL 5616962 (D. Me. July 30, 2019).

Here, the Plaintiff contends that the ALJ erred in failing to recognize the Plaintiff's back impairment, chronic pain syndrome, carpal tunnel syndrome, and Dupuytren's contracture as severe impairments. Pl.'s Itemized Statement of Errors 8 (ECF No. 11). To succeed on his Step 2 challenge, the Plaintiff must demonstrate that those impairments are severe and must also provide medical evidence regarding the limiting effects of the impairments. *Cook v. Berryhill*, 1:17-cv-00014-NT, 2017 WL 5153400, at *3 (D. Me. Nov. 7, 2017), *R. & R. adopted sub nom. Cook v. Soc. Sec. Admin. Comm'r*, Docket no. 1:17-cv-014-NT, 2017 WL 5760855 (D. Me. Nov. 28, 2017). "Failure to do so not only undermines a step 2 challenge, but renders harmless any supposed error." *Id.*

The Plaintiff claims that the ALJ did not assess any exertional limitations beyond those identified by the non-examining state agency consultants who, according to the Plaintiff, assessed a medium-work RFC "solely on the basis of his

6

amputated toes." Pl.'s Itemized Statement of Errors 9. That argument is unavailing. First, it appears that the two state agency consultants did not base their RFC assessments "solely" on the Plaintiff's amputation. They also considered the Plaintiff's back impairment in assessing his exertional limitations. Both Dr. Trumbull and Dr. Chopra reviewed the medical evidence in the file and took into account the Plaintiff's "mild" lumbar degenerative joint (or disc) disease in concluding that he was capable of medium work. R. 188–89; R. 215–18. The opinions of the non-examining medical reviewers "can constitute substantial evidence of RFC, particularly if those reviewers have had access to the material raw medical reports of examining and treating physicians." *Powers v. Barnhart*, No. 04-86-P-C, 2004 WL 2862170, at \*2 (D. Me. Dec. 13, 2004) (citing *Rose v. Shalala,* 34 F.3d 13, 18 (1st Cir. 1994)).

Second, the Plaintiff's argument fails because the ALJ *did* assess whether the Plaintiff's other impairments imposed additional limitations. For example, with respect to the Plaintiff's hand conditions, the ALJ noted that, despite the contracture of some of the fingers on his left hand, the Plaintiff's physical therapy records showed that he had better grip strength in his left hand than his right hand. R. 20. And the ALJ pointed to evidence in the record that, after undergoing carpal tunnel release surgery on his right hand and physical therapy, the Plaintiff reported that he could "do everything now." R. 20–21; *see* R. 1066. The ALJ similarly considered the effects of the Plaintiff's lower back pain complaints, finding that his lumbar spine degenerative disc disease did not result in more than minimal limitation on the

Plaintiff's ability to perform work activities. R. 19–20. There is substantial evidence in the record to support this finding. The Plaintiff's 2020 visit to his primary care physician showed that his musculoskeletal exam and range of motion and strength were normal, and he had no swelling or tenderness except for his lower lumbar spine and bilateral sacroiliac joints. R. 20, 24; R. 1059. Although he was being treated with oxycodone and morphine for chronic low back pain in the last few years, in his July 2020 medical records, the Plaintiff reported that "there have been no significant changes in his pain issues since his last visit" and "the pain medications allow him to p[er]form daily activities" with no significant side effects. R. 1073–74. As the ALJ points out, the Plaintiff was to engage in walking as part of regular physical activity to improve function and decrease pain. R. 20; *see* R. 1074. Because the Plaintiff fails to adduce medical evidence that his hand and lower back impairments had any more than a minimal impact on his ability to perform work, his Step 2 challenge fails.

Even if the Plaintiff had established that the ALJ erred at Step 2, "an error at Step 2 is uniformly considered harmless" and does not require remand "unless the [P]laintiff can demonstrate how the error would necessarily change the outcome of the [P]laintiff's claim." *Bolduc v. Astrue*, Civil No. 09-220-B-W, 2010 WL 276280, at *4 n.3 (D. Me. Jan. 19, 2010). Indeed, "remand is only appropriate when the claimant can demonstrate that an omitted impairment imposes a restriction beyond the physical and mental limitations recognized in the Commissioner's RFC finding, and that the additional restriction is material to the ALJ's 'not disabled' finding at step 4 or step 5." *Dawn D. v. Saul*, 1:19-cv-00350-DBH, 2020 WL 1285921, at *2 (D. Me.

Mar. 18, 2020), *R. & R. adopted,* Civil No. 1:19-cv-350-DBH, 2020 WL 2114355 (D. Me. May 4, 2020). The Plaintiff has not made such a showing here.[2]

### B.     Opinion Evidence Based on Incomplete Record

The Plaintiff also attacks the ALJ's reliance on the state agency medical consultants' opinions in assessing the Plaintiff's RFC because those opinions were based on the doctors' review of the record evidence as of mid-2016. According to the Plaintiff, these opinions were "stale" because: they were rendered before the Plaintiff was diagnosed with chronic pain syndrome (for which he was prescribed oxycodone and morphine) and bilateral carpal and cubital tunnel syndromes; before he had surgery on his right arm; and before the extent of his Dupuytren's contracture and resulting limitations were documented. Pl.'s Itemized Statement of Errors 10–11.

"[R]eliance on the opinion of a state-agency reviewer"—the non-examining consultants here—"may be inappropriate when material, new evidence is added to the record after that opinion has been submitted." *Preston v. Colvin*, Civil No. 2:13-CV-321-DBH, 2014 WL 5410290, at \*2 (D. Me. Oct. 21, 2014). But in certain

---

[2]     The Plaintiff points to a 2017 medical source statement completed by the Plaintiff's primary care physician, Dr. George Butlers, in an attempt to show that the omitted hand impairments impose manipulative limitations beyond the limitations in the ALJ's RFC finding. Pl.'s Itemized Statement of Errors 9 (ECF No. 11) (citing R. 706–08). But the ALJ explained that he gave Dr. Butlers' opinion that the Plaintiff could reach, handle, finger, and feel less than two and a half hours a day "little weight because it is inconsistent with the provider's own notes." R. 24–25; R. 641; R. 646; R. 708; *see Purdy v. Berryhill*, 887 F.3d 7, 13 (1st Cir. 2018) (pointing out that an ALJ determination that a doctor has "provided no discussion or analysis of his own prior observations" or has "merely check[ed] the right boxes . . . itself goes a long way toward supporting the ALJ's determination to accord [the doctor's] opinion little weight"); *Norman W. T. v. Kijakazi*, No. 2:20-cv-00275-NT, 2021 WL 5050061, at \*3 (D. Me. Oct. 31, 2021) (finding no reversible error where the ALJ supportably found that the treating physician's medical source statement opinion, which "checked boxes and offered little explanation" was "inconsistent with other evidence of record"), *R. & R. adopted,* Docket No. 2:20-cv-00275-NT, 2022 WL 19628 (D. Me. Jan. 3, 2022).

circumstances, "[a]n ALJ can rely on the opinions of state agency experts even where records are generated after and thus not considered as part of the experts' review." *Bowler v. Saul*, 2:20-cv-00132-GZS, 2021 WL 838887, at *3 (D. Me. Mar. 5, 2021), *R. & R. adopted,* No. 2:20-xc-00132-GZS, 2021 WL 1097309 (D. Me. Mar. 22, 2021). "This court has held that the presence in the record of medical evidence not available to a state-agency physician-reviewer upon whose conclusions the administrative law judge relies may require remand, but only if the later evidence leads to an outcome different from that reached by the administrative law judge." *Wood v. Astrue*, No. 1:10-cv-243-JAW, 2011 WL 1298460, at *2 (D. Me. Mar. 31, 2011), *R. & R. adopted,* No. 1:10-cv-00243-JAW, 2011 WL 1481320 (D. Me. Apr. 19, 2011). When the post-file-review medical evidence "is essentially cumulative, an administrative law judge's reliance on those reports is not error." *Preston*, 2014 WL 5410290, at *2.

Here, the two physician reviewers' opinions were rendered in 2016 so they did not see post-2016 medical records concerning the Plaintiff's chronic back pain, Dupuytren's contracture, and carpal tunnel syndrome diagnoses. But "[a] diagnosis, standing alone, does not establish that the diagnosed impairment would have more than a minimal impact on the performance of work activity." *Bowler*, 2021 WL 838887, at *2. And the Plaintiff has not demonstrated that the later evidence would lead to a different outcome. For example, the records that the consultants reviewed showed that the Plaintiff was already suffering from mild lower back tenderness and that he had reported severe back pain in 2016 and was being referred to the pain clinic. *See* R. 733, 738, 742–44, 750, 754. The ALJ considered the post-2016 medical

10

records and determined that they were essentially cumulative of the earlier records. The ALJ explained that "[a]lthough the . . . medical consultant opinions in this [case] were rendered a few years ago, . . . little has changed since their review." R. 24. "[W]hen an administrative law judge offers a reasonable explanation for concluding that records not seen by a particular state-agency reviewer 'contain nothing sufficiently new and material to call into serious question' the conclusions of that reviewer, remand is not indicated." *Wood*, 2011 WL 1298460, at *4 (quoting *Foltz v. Barnhart,* No. 04-219-B-W, 2005 WL 1353397, at *4 (D. Me. June 7, 2005)). That is the case here, so remand based on the Plaintiff's Step 2 challenge is not warranted.

## II. Constitutionality

The Plaintiff also argues that he was denied a valid administrative adjudicatory process because Andrew Saul's appointment as commissioner of the Social Security Administration violated the separation-of-powers provision of the U.S. Constitution. Pl.'s Itemized Statement of Errors 12–13. According to the Plaintiff, that, in turn, also makes former Commissioner Saul's rulemaking and his delegation of authority to the ALJ who decided the Plaintiff's case constitutionally defective and entitles the Plaintiff to a de novo hearing before a new ALJ who is free from any "unconstitutional taint." Pl.'s Itemized Statement of Errors 13–14.

In recent years, the Supreme Court has held that certain administrative tenure provisions—those that structure an agency with a single administrative head whose term exceeds the President's and who cannot be removed except for cause— are unconstitutional because they violate the separation of powers. *See Seila Law LLC v. Consumer Fin. Prot. Bureau*, 140 S. Ct. 2183 (2020); *Collins v. Yellen*, 141 S.

11

Ct. 1761 (2021). The commissioner of the Social Security Administration is appointed for a term of six years and may only be removed from office "pursuant to a finding by the President of neglect of duty or malfeasance in office." 42 U.S.C. § 902(a)(3). Thus, following *Seila Law* and *Collins*, this Court (as well as courts in other jurisdictions) have found that the Social Security Administration's agency structure is unconstitutional. *See, e.g.*, *Kathy R. v. Kijakazi*, 2:21-cv-00095-JDL, 2022 WL 42916, at *3 (D. Me. Jan. 5, 2022), *R. & R. adopted,* 2:21-cv-00095-JDL, 2022 WL 558359 (D. Me. Feb. 24, 2022).

The parties here agree that the Social Security Act violates the separation of powers as far as it limits the President's authority to remove the Commissioner without cause. *See* Def.'s Opp'n to Pl.'s Statement of Errors 9 (ECF No. 15). But to succeed on his constitutional challenge, the Plaintiff also "must show that the unconstitutional provision inflicted compensable harm." *Kathy R.*, 2022 WL 42916, at *3 (internal quotation marks omitted). In the Social Security context, this means demonstrating a causal connection between the unconstitutional removal restriction and the ALJ's denial of the Plaintiff's claim for benefits. *See id.* at *3–4. The Plaintiff has not made that showing. All the Plaintiff offers to establish this link is the assertion that, because his case was decided under Commissioner Saul's tenure, "a presumptively inaccurate legal process was utilized to adjudicate [ ]his disability claim at the administrative level." Pl.'s Itemized Statement of Errors 13. But the Supreme Court has never "suggest[ed] that compensable harm can be presumed." *See Harry E. B. v. Kijakazi*, No. 2:21-cv-00118-LEW, 2022 WL 669689, at *7 (D. Me. Mar.

6, 2022), *R. & R. adopted,* 2:21-cv-00118-LEW, 2022 WL 1451456 (D. Me. May 9, 2022). Because the Plaintiff fails to demonstrate that the Social Security Act's removal provision caused him compensable harm, he is not entitled to remand based on his constitutional challenge.

## CONCLUSION

For the reasons stated above, the Plaintiff's Statement of Errors (ECF No. 11) is **OVERRULED**, and the Commissioner's decision is **AFFIRMED**.

SO ORDERED.

/s/ Nancy Torresen
United States District Judge

Dated this 27th day of July, 2022.